UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
FARIZ ABASOV,

                     Plaintiff,

      - against -

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES (USCIS), *et al.*,

                    Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
25-CV-1793 (PKC)

PAMELA K. CHEN, United States District Judge:

    *Pro se* Plaintiff Fariz Abasov ("Plaintiff") brings the instant action against USCIS, Attorney General of the United States Pamela Bondi, Director of USCIS Kika Scott, Secretary of Homeland Security Kristi Noem, and United States Attorney for the Eastern District of New York John H. Durham ("Defendants"). Plaintiff argues that Defendants have unreasonably delayed adjudication of his application for asylum in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1), and seeks a writ of mandamus to compel Defendants to act on his application, 28 U.S.C. § 1361. (Compl., Dkt. 1, ¶¶ 19, 25; Pl.'s Mem. in Opp'n to Mot. to Dismiss ("Opp'n"), Dkt. 8, at 2.) Defendants move pursuant to Federal Rule of Civil Procedure ("Rule") 12(b) to dismiss the Complaint in its entirety. (Defs.' Mot. to Dismiss ("MTD"), Dkt. 7.) For the reasons set herein, the Court grants Defendants' motion to dismiss.

## BACKGROUND[1]

Plaintiff is a native of Azerbaijan, (Ex. E, Dkt. 1, at ECF[2] 21) who is seeking asylum in, and withholding of removal from, the United States, (Compl., Dkt. 1, at ECF 3).  In June 2021, Plaintiff was approved for an F2 visa and, shortly thereafter, arrived in the United States.  (*Id.* ¶ 11.)  On September 15, 2021, Plaintiff submitted an Application for Asylum and Withholding of Removal, known as a Form I-589 ("I-589"), with USCIS.  (*Id.*; Ex. A, Dkt. 1, at ECF 9.)

On May 24, 2024, Plaintiff requested that USCIS expedite his I-589 application.  (Compl., Dkt. 1, ¶ 13; Ex. E, Dkt. 1, at ECF 17–18.)  Plaintiff explained to USCIS that expediting his application was warranted due to several hardships he and his family faced.  (Ex. E, Dkt. 1, at ECF 17–18.)  Although he and his wife had acquired work authorization, (*see* Compl., Dkt. 1, ¶ 15; Ex. D, Dkt. 1, at ECF 14–15), Plaintiff explained that his spouse "faced constant rejection from employers due to the restrictions associated" with her authorization, (Ex. E, Dkt. 1, at ECF 17–18).  As a result, Plaintiff's daughter, who "did not qualify for any financial aid as an international student," left her college and the country, which Plaintiff claimed "caus[ed] immense emotional distress" to his spouse.  (*Id.* at ECF 17, 25.)  Moreover, Plaintiff's "pending asylum status" hindered his "ability to travel" and "support" ailing relatives abroad, as well as have family visit him.  (*Id.* at ECF 17–18.)  This family separation, he shared, "further compounded [his] family's emotional distress."  (*Id.*)

---

[1] For purposes of this Memorandum & Order, the Court assumes the truth of Plaintiff's non-conclusory, factual allegations in the Complaint.  *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

On June 11, 2024, USCIS rejected Plaintiff's request because the reasons stated in his letter "d[id] not meet the extreme emergent need required for an expedite." (*Id*. at ECF 19.)

Plaintiff filed suit in the Eastern District of New York on April 1, 2025, seeking to compel Defendants to adjudicate his application. (Dkt. 1.) Plaintiff claims the four years he has been waiting for a decision constitutes "an unreasonable delay" under the APA. (*See* Compl., Dkt. 1, ¶¶ 10, 19–20.) Plaintiff alternatively requests that the Court issue a writ of mandamus "compelling Defendants to adjudicate Plaintiff's I-589" application, pursuant to the Mandamus Act, 28 U.S.C. § 1361. (*Id.*, ¶ 25.) On June 6, 2025, Defendants moved to dismiss pursuant to Rule 12(b). (MTD, Dkt. 7.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6)[3], "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face where it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In reviewing a complaint for failure to state a claim, the Court accepts as true all factual allegations and draws from them all reasonable inferences, while disregarding "conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021) (quoting *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020)). Furthermore, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally," *Triestman v. Fed. Bureau of Prisons*,

---

[3] Although Defendants' motion does not set forth the subsection of Rule 12(b) pursuant to which they seek to dismiss the Complaint, (*see* MTD, Dkt. 7), it is apparent that their arguments seek dismissal for failure to state a claim, Rule 12(b)(6).

3

470 F.3d 471, 474 (2d Cir. 2006) (internal citations omitted), and read to "raise the strongest arguments they suggest," *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

## DISCUSSION

### I. Plaintiff's APA Claim

The APA provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Courts may, however, "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). To determine whether agency action has been unreasonably delayed, courts look to the "source of delay—e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." *Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 120 (2d Cir. 1999) (citing *Pub. Citizen Health Rsch. Grp. v. Comm'r*, 740 F.2d 21, 35 (D.C. Cir. 1984)). Where, as here, Plaintiff seeks "to compel action by immigration authorities, courts utilize the six-factor test articulated in *Telecommunications Research & Action v. F.C.C.*, 750 F.2d 70, 79 (D.C. Cir. 1984) ('TRAC') to determine whether relief under the APA is warranted." *Yueliang Zhang v. Wolf*, No. 19-CV-5370 (DLI), 2020 WL 5878255, at *4 (E.D.N.Y. Sep. 30, 2020) (quoting *Hoo Loo v. Ridge*, 2007 WL 813000 at *4 (E.D.N.Y. Mar. 14, 2007)); *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 84 (2d Cir. 2013), *as amended* (Mar. 21, 2013) (adopting *TRAC* factors as the "test for determining if agency action is unreasonably delayed").[4] These so-called "*TRAC*" factors are:

---

[4] Some out-of-Circuit district courts have declined to analyze the *TRAC* factors on a motion to dismiss due to their fact-intensive nature. *See Saharia v. U.S. Citizenship & Immigr. Servs.*, No. 21-CV-3688 (NSR), 2022 WL 3141958, at *4 (S.D.N.Y. Aug. 5, 2022) (applying *TRAC* factors to a plaintiff's APA claim, while noting that some courts have found the factors too fact-intensive for analysis on a motion to dismiss). But courts within this Circuit have regularly held

(1) [T]he time agencies take to make decisions must be governed by a rule of reason;

(2) [W]here Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply context for this rule of reason;

(3) [D]elays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) [T]he court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) [T]he court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) [T]he court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.3d at 80 (citations and internal quotation marks omitted).  A plaintiff need not "demonstrat[e] that all of these factors weigh in that party's favor" to prevail on an unreasonable delay claim. *Mu v. U.S. Citizenship & Immigr. Servs.*, No. 23-CV-2067 (HG), 2023 WL 4687077, at *4 (E.D.N.Y. July 22, 2023).  At the same time, a court may "refuse[] to grant relief, even though all the other factors considered in *TRAC* favor[ ] it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *L.M. v. Johnson*, 150 F. Supp. 3d 202, 213 (E.D.N.Y. 2015) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)).

---

that unreasonable delay claims may be decided at the motion-to-dismiss stage. *See Khan v. U.S. Dep't of State*, 722 F. Supp. 3d 92, 99 n.6 (D. Conn. 2024); *Sheiner v. Mayorkas*, No. 21-CV-5272 (ER), 2023 WL 2691580, at *5 n.12 (S.D.N.Y. Mar. 29, 2023); *Aydemir v. Garland*, No. 22-CV-100 (PAC), 2022 WL 4085846, at *3 n.2 (S.D.N.Y. Sep. 6, 2022); *Wara v. U.S. Citizenship & Immigr. Servs.*, No. 24-CV-3535 (OEM), 2025 WL 2208255, at *4 (E.D.N.Y. Aug. 4, 2025).

For the following reasons, the Court holds that the balance of the *TRAC* factors weigh against finding Defendants' four-year delay unreasonable under the APA.[5]

### A.     First *TRAC* Factor: Rule of Reason

The first, "most important" *TRAC* factor—whether a rule of reason governs the time it takes the agency to make the decision at issue—weighs in favor of Defendants. *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008); *Kaur v. Mayorkas*, No. 22-CV-4514 (PAE), 2023 WL 4899083, at *6 (S.D.N.Y. Aug. 1, 2023) (citations omitted). The parties dispute whether USCIS's approach to processing I-589 applications—"last-in-first-out," or "LIFO"—is a rule of reason. (MTD, Dkt. 7, at 3; Opp'n, Dkt. 8, at 3.) The LIFO approach, adopted in 2018, prioritizes review of the newest applications to "discourage individuals from potentially filing meritless asylum applications to take advantage of the backlog to obtain employment authorization" while their case is pending. U.S. Citizenship and Immigr. Servs., *Backlog Reduction of Pending Affirmative Asylum Cases: Fiscal Year 2021 Report to Congress* 2 (2021); *see* U.S. Citizenship and Immigr. Servs., *Asylum Application Processing: Fiscal Year 2022 Report to Congress* 4 (2022) (providing a similar explanation).[6] Plaintiff asserts that LIFO is not a rule of reason because it has "systematically marginalized older cases" and failed to reduce the backlog of applications. (Opp'n, Dkt. 8, at 3.) The Court disagrees, for two reasons.

*First*, the fact that LIFO has a backlog does not undermine its validity as a rule of reason. "[R]ules of reason are not judged on whether they provide the best solution to a problem, but

---

[5] The Court will address the *TRAC* factors from most to least important.

[6] "In deciding a Rule 12(b)(6) motion, a court may take 'judicial notice of documents in the [public] record, including of the records and reports of administrative bodies.'" *Yueliang Zhang*, 2020 WL 5878255, at *1 n.2 (quoting *Volpe v. Nassau Cty.*, 915 F. Supp. 2d 284, 291 (E.D.N.Y. 2013)); *see Mu*, 2023 WL 4687077, at *2 (taking judicial notice of the fact that USCIS adjudicates asylum applications "on a LIFO basis").

6

whether they constitute a reasoned attempt to address mounting issues within a system." *Jan v. Mayorkas*, No. 24-CV-1686 (LDH), 2025 WL 964092, at *4 (E.D.N.Y. Mar. 31, 2025) (quoting *He v. Garland*, No. 23-CV-5386 (EK), 2024 WL 3708146, at *3 (E.D.N.Y. Aug. 7, 2024)). LIFO, which presents an agency's "establishment of a logical system to prioritize and process applications," is one such attempt. *Lin v. Mayorkas*, No. 24-CV-01403 (RER), 2025 WL 1884304, at *4 (E.D.N.Y. July 7, 2025). Numerous courts have accordingly recognized that although LIFO "forces asylum applicants who filed earlier to bear the brunt of those delays," it does so as part of an "attempt to address mounting issues with the asylum application process." *See, e.g.*, *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 53 (S.D.N.Y. 2020); *He*, 2024 WL 3708146 at *3 (making the same observation and concluding that the "LIFO model, despite any shortcomings, meets [the rule of reason] standard"). "[T]he fact that the system includes various forms of prioritization and delay . . . does [not] entitle Plaintiff[] to relief under the APA." *L.M.*, 150 F. Supp. 3d at 214 n.4. And Plaintiff does not allege that the delay in adjudicating his application is attributable to a lack of diligence by Defendants or anything other than the effects of LIFO. *Ying Yu Liu v. Wolf*, No. 19-CV-0410 (PGG), 2020 WL 2836426, at *8 (S.D.N.Y. May 30, 2020) (concluding that "the delay was the result of the LIFO rule, which was itself a reasoned response to a systemic crisis" (quoting *Fangfang Xu*, 434 F. Supp. 3d at 53)).

*Second*, even assuming, for the sake of argument, that LIFO's backlog undermines its validity as a "rule of reason," (*see* Opp'n, Dkt. 8, at 3), USCIS has recently implemented reforms to address that concern. In 2024, USCIS introduced "a second track, in which other asylum officers are assigned to I-589s in the backlog, starting with the oldest applications and working forward." (MTD, Dkt. 7, at 2); *see also Affirmative Asylum Interview Scheduling*, U.S. Citizenship and Immigr. Servs., https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirm

7

ative-asylum-interview-scheduling (last updated Mar. 29, 2024) (explaining that the second track "permits some of the oldest pending applications to be completed in chronological order").[7] This second track bolsters the conclusion that LIFO provides a rule of reason. *See Chang v. Jaddou*, No. 24-CV-6565 (JPC) (SLC), 2025 WL 2015143, at *6 (S.D.N.Y. July 18, 2025) (concluding the "two-track system" constitutes a rule of reason); *Cheng v. Garland*, No. 24-CV-3465 (JLR), 2024 WL 5009146, at *3 (S.D.N.Y. Dec. 6, 2024) (observing that "USCIS also recently adjusted its system for scheduling affirmative asylum interviews 'to adjudicate backlogged applications in chronological order'" and concluding that LIFO is a rule of reason).

The Court thus joins the courts in this Circuit that have concluded that LIFO provides a rule of reason. *See Yueliang Zhang*, 2020 WL 5878255, at *4 ("Numerous courts have found that the USCIS's use of LIFO in the asylum context is a rule of reason."); *Wara*, 2025 WL 2208255, at *5 (joining "other courts in this Circuit by holding that Defendants' adjudication of asylum applications on a LIFO scheduling system is . . . an appropriate rule of reason"); *Konde v. Raufer*, No. 23-CV-4265, 2024 WL 2221227, at *2 (S.D.N.Y. May 16, 2024) (joining the "chorus of judges in this Circuit finding that the time USCIS takes to adjudicate asylum applications through its LIFO policy is governed by a rule of reason").

### B.     Fourth *TRAC* Factor: Effect of Expediting Delayed Action

The fourth *TRAC* factor—the effect of expediting the delayed action—which is also one of the "most relevant" considerations, weighs strongly in favor of Defendants. *N-N v. Mayorkas*, 540 F. Supp. 3d 240, 262 (E.D.N.Y. 2021) (citation omitted). An agency "is in a unique—and

---

[7] A court may also take judicial notice of documents retrieved from official government websites. *See Singh v. U.S. Citizenship & Immigr. Servs.*, No. 24-CV-3003 (LDH), 2025 WL 964145, at *1 n.3 (E.D.N.Y. Mar. 31, 2025) (citing *Rynasko v. New York Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023)).

8

authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *Kaur*, 2023 WL 4899083, at *11 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991)). For the Court "to demand an accelerated protocol, [it] would have to intrude into a quintessentially administrative function, and in the process reconfigure the agency's priorities" by ordering it to expedite an application merely because a suit has been filed. *N-N*, 540 F. Supp. 3d at 261; *see Xiaobin Xu v. Nielsen*, No. 18-CV-2048 (BMC), 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018) (dismissing an unreasonable delay claim in part because "[t]here are many other applicants who have waited even longer than plaintiff; to grant him priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit"); *Gong v. Duke*, 282 F. Supp. 3d 566, 569 (E.D.N.Y. 2017) (same).

Here, Defendants contend—and Plaintiff does not dispute—that "immediately adjudicating his application would unjustifiably benefit Plaintiff over others simply because he filed suit." (MTD, Dkt. 7, at 3.) Rather, Plaintiff takes issue with what he charges is USCIS's "neglect of longstanding filings." (Opp'n, Dkt. 8, at 3.) But "[a]s frustrating as the USCIS backlog may be, it is not apparent that allowing line jumping" would encourage the agency "to change its ways." *Poz v. Mayorkas*, No. 23-CV-7902 (DLI), 2024 WL 4309234, at *5 (E.D.N.Y. Sep. 26, 2024) (citation omitted); *see Qi v. U.S. Citizenship & Immigr. Servs.*, No. 23-CV-8843 (JLR), 2024 WL 2262661, at *6 (S.D.N.Y. May 17, 2024) ("[L]eapfrogging Plaintiff's application to the front of the line would do nothing to cure the deficiencies of the asylum application process . . . ." (quoting *Baisheng Chen v. Wolf*, No. 19-CV-9951 (AJN), 2020 WL 6825681, at *6 (S.D.N.Y. Nov. 20, 2020)). Rather, moving Plaintiff's application to the front of the line would "simply move all other[] [applicants] back one space." *FangFang Xu*, 434 F. Supp. 3d at 54 (quoting *L.M.*, 150 F.

9

Supp. 3d at 213); *see Sunny v. Biden*, No. 21-CV-4662 (BMC), 2023 WL 5613433, at *3 (E.D.N.Y. Aug. 30, 2023) (same); *Konde*, 2024 WL 2221227, at *4 (same). Thus, the Court concludes that expediting Plaintiff's application would disrupt "agency activities of a higher or competing priority." *TRAC*, 750 F.3d at 80.

### C.  Second *TRAC* Factor: Statutory Scheme

The second *TRAC* factor—whether "Congress has provided a timetable" for the agency to act—similarly does not support finding USCIS's delay unreasonable. *Id.* at 80. Congress has directed USCIS to adjudicate an asylum application "within 180 days after the date an application is filed." *See* 8 U.S.C. § 1158(d)(5)(A)(iii). However, in the very same subsection, Congress divests applicants of "any substantive or procedural right or benefit that is legally enforceable" against the "United States or its agencies or officers or any other person." *Id.* § 1158(d)(7). Because applicants may not enforce the 180-day adjudication timeline, the Court does not accord significant weight to this timetable. *See Ujka v. Mayorkas*, No. 24-CV-4801 (KPF), 2025 WL 2419545, at *7 (S.D.N.Y. Aug. 21, 2025) (compiling cases giving the second *TRAC* factor little weight in light of 8 U.S.C. § 1158(d)(7)); *Ying Yu Liu*, 2020 WL 2836426, at *9 ("Given Congress's decision that the schedule it set forth [in § 1158(d)] would not be binding, this Court cannot give that schedule binding effect here." (citation omitted)); *Fangfang Xu*, 434 F. Supp. 3d at 53 (reaching a similar conclusion).

### D.  Third and Fifth *TRAC* Factors: Prejudice to Health and Welfare

Plaintiff's Complaint focuses almost entirely on the third and fifth *TRAC* factors, which concern the nature and extent to which Defendants' delay prejudices his human health and welfare. Plaintiff's Complaint details how the four years he has waited for a decision has caused "significant emotional distress, financial instability, and uncertainty." (Compl., Dkt. 1, ¶ 15.) Although Plaintiff and his wife both obtained employment authorization, he claims that renewing his

10

employment authorization documents "took fifteen months," (*id.*), and that even when his wife had employment authorization, employers were reluctant to hire her "due to the restrictions associated" with her authorization, (Ex. E, Dkt. 1, at ECF 17–18). Plaintiff further states that his spouse's application to renew her employment authorization was "denied [in February 2025] due to an erroneous fee-related issue," (Compl., Dkt. 1, ¶ 15), and he is now "the sole provider for [his] family," (Ex. E, Dkt. 1, at ECF 25).

While the Court is sympathetic to the difficulties Plaintiff and his family have experienced and are continuing to experience, such hardships are lamentably commonplace among asylum-seekers. Many asylum seekers spend years without seeing family members as they await a decision. *See, e.g.*, *Zheng v. Garland*, No. 22-CV-6039 (AMD), 2024 WL 333090, at *6 (E.D.N.Y. Jan. 29, 2024) (observing that delay, which kept plaintiff from visiting elderly parents abroad, "could just as easily be true for every other noncitizen whose asylum application has been delayed" (quoting *De Oliveira v. Barr*, No. 19-CV-1508 (ENV), 2020 WL 1941231, at *5 (E.D.N.Y. Apr. 22, 2020))); *Singh v. U.S. Citizenship & Immigr. Servs.*, No. 24-CV-3562 (RPK), 2025 WL 1489804, at *3 (E.D.N.Y. May 22, 2025) (concluding that delay, which prevented plaintiff "from seeing his immediate family in India . . . would not differentiate" his application from that of other asylum-seekers). And although asylum-seekers may obtain work authorization, delays in obtaining renewed authorizations, as well as employers' reluctance to hire individuals with such authorization, is well-documented. *See Ujka*, 2025 WL 2419545, at *7 (concluding that the third and fifth *TRAC* factors did not favor a plaintiff even where the plaintiff alleged that employers were reluctant to hire employees "in her position"); *Cohen v. Jaddou*, No. 21-CV-5025 (PAC), 2023 WL 2526105, at *5 (S.D.N.Y. Mar. 15, 2023) (finding a plaintiff's allegations that his work authorization "restricted [] his ability to obtain employment" to be insufficient to justify APA relief

11

(citation omitted)); *Chang*, 2025 WL 2015143, at *7 (dismissing unreasonable delay claim despite plaintiff's allegations of delays in processing work authorization). In this regard, Plaintiff has not demonstrated why his application should be placed in front of "longer-pending applications that present comparable interests." *Singh*, 2025 WL 1489804, at *3; *see also Plesha v. Garland*, No. 24-CV-7234 (BMC), 2024 WL 5221202, at *6 (E.D.N.Y. Dec. 26, 2024) (declining to grant relief because doing so would push the plaintiff "ahead of other applicants waiting for the adjudication" who may be facing "the same or worse harms and threats to their welfare").

      That said, Plaintiff has plausibly alleged financial harm arising out of USCIS's denial of his spouse's application to renew her employment authorization. (*See* Ex. D, Dkt. 1, at ECF 14–15 (USCIS letter denying employment authorization renewal); Ex. E, Dkt. 1, at ECF 25 (alleging it has become "increasingly difficult to sustain ourselves").) Defendants admit—in a footnote—that "Plaintiff's spouse's [employment authorization document] is pending with USCIS." (Reply, Dkt. 9, at 3 n.4.) Nonetheless, Defendants insist that this fact "is not the basis of any claim in this action." (*Id.*) The Court disagrees. Plaintiff's Complaint ties his spouse's inability to renew her employment authorization to his worsening financial situation. (*See* Ex. E, Dkt. 1, at ECF 25.) The inability to work is a kind of harm contemplated by the third and fifth *TRAC* factors—and a harm that distinguishes Plaintiff's application from others in the queue. *See Ray v. Cuccinelli*, No. 20-CV-06279-JSC, 2020 WL 6462398, at *9 (N.D. Cal. Nov. 3, 2020) (concluding that the Third and Fifth TRAC factors favored plaintiffs because their "inability to maintain continuous, lawful employment and associated benefits" was a prejudice that "exists not only for [them], but for their families"); *cf. Qi*, 2024 WL 2262661, at *6 (concluding that the third and fifth *TRAC* factors did not favor a plaintiff in part because he "d[id] not allege that he has been unable to work during the pendency of his application"); *Cohen*, 2023 WL 2526105, at *5 (finding allegations as to prejudice

12

insufficient because "Plaintiff essentially admits that he is not *prevented* from obtaining employment"). However, Plaintiff does not dispute that *he* currently is able to work, which somewhat mitigates the prejudice that he claims. (Reply, Dkt. 8, at 3 n.4.) The Court thus finds that the delay "tips the third and fifth factors in [Plaintiff's] favor, albeit to only a slight degree." *See Kaur*, 2023 WL 4899083, at *10–11 (reasoning that at least some of the harms a plaintiff alleged were not "inherent to the application process" (quoting *Sheiner*, 2023 WL 2691580, at *9)).

### E.   Sixth *TRAC* Factor: Agency Impropriety

Plaintiff does not allege any agency "impropriety" is contributing to the delay at issue. *TRAC*, 750 F.3d at 80. Thus, this factor is neutral. *Kaur*, 2023 WL 4899083, at *12; *Waris v. Bitter*, No. 23-CV-9487 (JGLC), 2024 WL 3237914, at *8 (S.D.N.Y. June 28, 2024).

\*   \*   \*

In sum, although the third and fifth *TRAC* factors slightly favor Plaintiff's APA claim for expedited consideration of his asylum petition, the first, fourth, and second factors lead the Court to find that Defendants' delay is not unreasonable. The Court does not wish to minimize the harm that Plaintiff and his family are experiencing due to the uncertainty inherent to the asylum process. But in light of our overtaxed immigration system, many courts have found delays longer than Plaintiff's not to be unreasonable under the APA. *See Abdiev v. Garland*, No. 23-CV-8091 (DEH), 2024 WL 3742545, at *5 (S.D.N.Y. Aug. 9, 2024) (concluding a delay of more than four years for asylum adjudication was not unreasonable); *Ahmed v. Bitter*, No. 23-CV-189 (NGG) (RJL), 2024 WL 22763, at *7 (E.D.N.Y. Jan. 2, 2024) ("[D]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." (citation omitted)). Plaintiff's APA claim must therefore be dismissed.

13

## II. Plaintiff's Mandamus Claim

Plaintiff's Mandamus Act claim similarly must be dismissed. The Mandamus Act permits a district court to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is an "extraordinary remedy," *Escaler v. U.S. Citizenship & Immigr. Servs.*, 582 F.3d 288, 292 (2d Cir. 2009), and is only available where the plaintiff establishes that "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available," *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008) (citation omitted).

Because Plaintiff can—and does—bring an undue delay claim under the APA, "[t]he Court need not . . . consider whether Plaintiff has satisfied the first two requirements" for mandamus relief. *Mu*, 2023 WL 4687077, at *3. The ability to bring a cause of action under the APA—even where, as here, Plaintiff has "failed to adequately plead that alternative remedy"—means that Plaintiff has an "adequate alternative remedy," and therefore cannot state a mandamus claim. *Cohen*, 2023 WL 2526105, at *7 (S.D.N.Y. Mar. 15, 2023) (citation omitted); *Zhuo v. Mayorkas*, No. 23-CV-5416 (DLI), 2024 WL 4309232, at *3 (E.D.N.Y. Sep. 26, 2024); *Luo v. U.S. Citizenship & Immigr. Servs.*, No. 23-CV-1104 (HG), 2023 WL 5672041, at *3 (E.D.N.Y. Sep. 1, 2023).

## CONCLUSION

For the reasons stated above, the Court grants Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). "At some point," however, "Defendants' continued failure to act on Plaintiff['s] asylum application, if it continues, may be so severe as to give rise to an APA violation." *Abdiev*, 2024 WL 3742545, at *5. The Court therefore dismisses Plaintiff's Complaint without prejudice, so Plaintiff may refile "should [his] application

14

for asylum remain pending without decision to an unreasonable degree." *Konde*, 2024 WL 2221227, at *5.

The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: December 22, 2025
Brooklyn, New York

15